**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| In re: | |
| The Jerry Cox Company, | Case No. 10-06501-jw |
| | Chapter 11 |
| Debtor. | |
| | |
| Michael Dante Hughes | Case No. 11-01286-jw |
| Angela Ann Hughes, | Chapter 11 |
| | |
| Debtors. | |
| | |
| Kathryn C. McLean, | Case No. 11-04459-jw |
| | Chapter 11 |
| Debtor. | |

**ORDER DENYING ATTORNEY COMPENSATION, REQUIRING DISGORGEMENT OF RETAINERS & PROHIBITING FURTHER PAYMENT OF DEBTORS COUNSEL**

The matters before the Court arise out of attorney Rose Marie Cooper's representation of the debtors in the three captioned chapter 11 cases. On August 17, 2011, while each of the cases were in various stages of the chapter 11 process, the South Carolina Supreme Court issued an order suspending Ms. Cooper from the practice of law. In September 2011, Robert H. Cooper, a bankruptcy attorney residing in Greenville, South Carolina and Ms. Cooper's husband who has lived separate and apart from Ms. Cooper for a number of years, was approved by the Court to substitute for Ms. Cooper in representing the debtors in the three cases. After her reinstatement to the practice of law on November 16, 2011, Ms. Cooper sought and obtained orders from the Court re-substituting her as debtors' attorney in the three cases.

On March 7, 2012, Ms. Cooper filed an "Attorney's Application for Compensation *Nunc Pro Tunc*" in the case *In re The Jerry Cox Company*, Case No. 10-06501-jw (*Jerry Cox*

1

*Company*) seeking approval of fees in the amount of $45,135. On March 22, 2012, Ms. Cooper filed an "Attorney's Application for Compensation *Nunc Pro Tunc*" in the case *In re Michael Dante Hughes and Angela Ann Hughes*, Case No. 11-01286-jw (*Hughes*) seeking approval of fees in the amount of $21,582.20. The United States Trustee (UST) filed objections to the applications in both of these cases and asked for disgorgement of the retainers paid by the debtors to Ms. Cooper. At the hearing on Ms. Cooper's application for compensation in the *Jerry Cox Company* case, Ms. Cooper conceded that postpetition she had withdrawn the retainer she had received from the debtor in that case and the retainers she had received from the debtors in the *Hughes* case and the case of *In re Kathryn C. McLean*, Case No. 11-04459-jw (*McLean*). Ms. Cooper also informed the Court that she had withdrawn the retainers in all three cases postpetition without first seeking or obtaining Court approval of her fees and expenses and that she had used the retainers to pay her personal living expenses.

On April 2, 2012, Robert H. Cooper filed an "Amended Attorney's Application for Compensation"[1] in the *Jerry Cox Company* case seeking fees in the amount of $33,128.50. The UST filed an objection to Mr. Cooper's application.

Hearings were held to consider Ms. Cooper's applications for fees in the *Jerry Cox Company* and *Hughes* cases, and Mr. Cooper's application for fees in the *Jerry Cox Company* case. For the reasons stated in this order, the Court denies Ms. Cooper's fee applications in the *Jerry Cox Company* and *Hughes* cases[2] and rules that Ms. Cooper will not be entitled to fees for her past or future representation of the debtor in the *McLean* case. The Court also orders disgorgement of the retainers paid to Ms. Cooper in all three cases, which retainers total $70,000. Disgorgement shall be made to the debtors in the cases and shall be made according to

---

[1] Robert H. Cooper filed both an application and an amended application on May 2, 2012. This order will refer only to the amended application.

[2] Both the *Jerry Cox Company* case and the *Hughes* case have been closed by the Court.

the schedule of payments described herein.  **The debtors are ordered to accept the disgorged fees paid pursuant to this order and shall not make future payments to Ms. Cooper or Mr. Cooper.**

Mr. Cooper has withdrawn his application for fees in the *Jerry Cox Company* case and has waived any entitlement to fees in the *Hughes* and *McLean* cases.[3]

This Court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding.  In accordance with Fed. R. Bankr. P. 7052 and 9014(c), the Court makes the following findings of fact and conclusions of law.

### FINDINGS OF FACT IN *JERRY COX COMPANY* CASE

1. The *Jerry Cox Company* chapter 11 petition was filed on September 7, 2010.  The debtor's initial filings included Ms. Cooper's "Disclosure of Compensation of Attorney for Debtors" which disclosed that Ms. Cooper had agreed to accept $30,000 for legal services, that prior to filing the case, Ms. Cooper had received $15,000, and that there was a balance due of $15,000.  The debtor's Statement of Financial Affairs, filed on October 5, 2010, stated that the debtor paid $15,000 in attorney fees and $1,039 in court costs to Ms. Cooper on September 7, 2010.  In its monthly operating report for September, filed on October 21, 2010, the debtor reported that it had made payments of professional fees totaling $31,039 during September.  At the hearing on her fee application, Ms. Cooper informed the Court that she had, in fact, received the $30,000 retainer before the case was filed.

2. On October 11, 2010, more than a month after the *Jerry Cox Company* case was filed, an application was filed seeking Court approval of Ms. Cooper to serve as attorney for the debtor.  The debtor's application seeking to employ Ms. Cooper, and Ms. Cooper's attached affidavit submitted pursuant to Fed. R. Bankr. P. 2014(a), included identical paragraphs which

---

[3] Except that Mr. Cooper has not waived his entitlement to fees for his service as special counsel for IRS matters in the *McLean* case.

provided as follows:

> Debtor met with the undersigned attorney on September 6, 2010 for an initial interview to determine the best course of action with reference to bankruptcy. Attorney informed Debtor of fees and information needed to file a Chapter 11 case. Following this, the Debtor met with attorney Rose Marie Cooper for three hours on September 6, 2010 to retain the firm and begin collection of the data required for filing an emergency petition. Attorney prepared the emergency filing. On September 7, 2010, at 1:36 pm, the Debtor filed an emergency petition. The Debtor has paid to the firm $30,000.00 in attorney fees, and $1,039.00 Court Costs. All fees collected are deposited in escrow.
>
> The Debtor and Cooper Law Firm have agreed that Rose Marie Cooper, Esquire of Cooper Law Firm will be employed on a general retainer, that said attorney will bill at her customary rate of $295.00 per hour for her services in business cases, and that she will charge for the time of her legal assistant at $75.00 per hour. Cooper Law Firm had been paid a retainer prior to the filing of this case in the amount of $30,000.00 in attorney fees, and $1,039.00 Court Costs. All funds received will be escrowed by Cooper Law Firm until such time as fees are approved by the Court, and the Disclosure of Attorney Compensation required by FRBP 2016 will be amended, when necessary, to disclose fees as those are paid.

Ms. Cooper's affidavit also stated that she was a disinterested person as defined in 11 U.S.C. § 101(14)[4], i.e. she was not owed fees by the debtor and was not otherwise a creditor of the debtor at the time of filing. Ms. Cooper's affidavit did not disclose that she was, in fact, owed fees for prepetition work performed for the debtor.

    3.       The Court approved the application to employ Ms. Cooper on October 27, 2010.

    4.       As a result of Ms. Cooper being suspended from the practice of law, on September 13, 2011, Ms. Cooper's representation of the debtor ended and Mr. Cooper was approved by the Court to represent the debtor. On January 2, 2012, after Ms. Cooper had been reinstated to the practice of law, the Court approved an application ending Mr. Cooper's

---

[4] Further references to the Bankruptcy Code, 11 U.S.C. § 101, *et seq.*, shall be by section number only. Further references to the Federal Rules of Bankruptcy Procedure shall be by Rule number only.

representation of the debtor and reinstating Ms. Cooper as the debtor's attorney.

5. On February 16, 2012, Ms. Cooper filed an Application for Final Decree, seeking to close the debtor's case. On February 27, 2012, the UST informed Ms. Cooper that it was the position of the UST that in order for the Court to rule on the Application for Final Decree, Ms. Cooper would need to file an application for her fees and those of any other professionals employed in the case. The UST also suggested that because Ms. Cooper's accounts had not remained in her control throughout the case, she should be prepared to demonstrate to the Court that the retainer paid by the debtor had remained in escrow since being paid to her.

6. Ms. Cooper filed the her application for fees on March 7, 2012. This was the first request made by Ms. Cooper for fees in this case. Ms. Cooper sought approval of fees in the amount of $45,135. Ms. Cooper informed the Court that the application "has been filed with the court Nunc Pro Tunc with the intent to inform the court that the Applicant failed to follow the appropriate guidelines regarding disbursement of Debtor's retainer." At the hearing on her fee application, Ms. Cooper stated that postpetition she had withdrawn the $30,000 retainer she had received from the debtor to pay her living expenses.

7. Ms. Cooper's fee application listed fees owing to her for services rendered to the debtor prepetition in the amount of $4,720.

8. On the same date that Ms. Cooper filed her fee application, she filed a motion seeking to expedite the hearing on the application, in an effort to resolve all matters in the case so that the final decree could be entered by the Court prior to April 1, 2012, on which date the debtor would have incurred new liability for quarterly fees pursuant to 11 U.S.C. § 1930(a)(6).[5]

---

[5] The application for an expedited hearing was denied. However, the final decree was entered by the Court on March 29, 2012 and the Court retained jurisdiction to consider the application.

9. Ms. Cooper also informed the Court in her application that the "entirety of the electronic documentation regarding hundreds of phone conversations, e-mails, and personal conversations was irretrievably lost during the interruption of Applicants (sic) representation of the Debtor." Ms. Cooper stated that the application was "pieced together based on the information provided by the Court docket, Debtor's files and the Applicants (sic) appointment calendar."

10. On April 2, 2012, Robert H. Cooper filed an "Amended Attorney's Application for Compensation" in the *Jerry Cox Company* case seeking fees in the amount of $33,128.50.

11. The UST's objection to Mr. Cooper's fee application included the UST's concern that after his substituted employment in the cases, Mr. Cooper learned that Ms. Cooper had invaded the retainers in the cases. The UST contended that if this was so, Mr. Cooper was under a duty to inform the Court of Ms. Cooper's transgressions. At the hearing on his application for fees, Mr. Cooper acknowledged that the attorney assigned by the South Carolina Supreme Court to administer Ms. Cooper's files and accounts during her suspension had informed him that there was a problem with Ms. Cooper's trust accounts. However, Mr. Cooper also informed the Court that he asked Ms. Cooper about her trust accounts and she told him that the retainers were all intact.

12. Mr. Cooper withdrew his application for fees.

### FINDINGS OF FACT IN THE *HUGHES* CASE

1. The *Hughes*' chapter 11 petition was filed on February 28, 2011. The debtors' initial filings included Ms. Cooper's "Disclosure of Compensation of Attorney for Debtors" which disclosed that she had agreed to accept $20,000 for legal services, that prior to filing the

case, she had received $461.00 toward the $20,000 and $1,039 for the filing fee, and that there was a balance due of $19,539. In their monthly operating report (MOR) for March 2011, filed on April 26, 2011, the debtors reported that they had made payments of attorney fees totaling $5,000 during March. In their MOR for April 2011, filed on May 24, 2011, the debtors reported that they had made payments of attorney fees totaling $6,000 during April. In their MOR for May 2011, filed on June 20, 2011, the debtors reported that they had made payments of attorney fees totaling $9,539 during May. According to their MOR's, the total of the payments made by the debtors to Ms. Cooper post-petition were $20,539.

2. On April 4, 2011, more than a month after this case was filed, an application was filed seeking court approval of Ms. Cooper to serve as attorney for the debtors. The debtors' application seeking to employ Ms. Cooper and her affidavit included identical paragraphs which provided as follows:

> Debtors met with the undersigned attorney on February 14, 2011 for an initial interview to determine the best course of action with reference to bankruptcy. Attorney informed Debtors of fees and information needed to file a Chapter 11 case. Following this, the Debtors met with attorney Rose Marie Cooper for two hours on February 22 to retain the firm and begin collection of the data required for filing an emergency petition. Attorney prepared the emergency filing. On February 28, 2011, the Debtors filed an emergency petition. The Debtors has (sic) paid to the firm $461.00 in attorney fees, and $1,039.00 Court Costs. All fees collected are deposited in escrow.
>
> The Debtors and Cooper Law Firm have agreed that Rose Marie Cooper, Esquire of Cooper Law Firm will be employed on a general retainer, that said attorney will bill at her customary rate of $295.00 per hour for her services in business cases, and that she will charge for the time of her legal assistant at $75.00 per hour. Cooper Law Firm had been paid a retainer prior to the filing of this case in the amount of $461.00 in attorney fees, and $1,039.00 Court Costs. All funds received will be escrowed by Cooper Law Firm until such time as fees are approved by the Court, and the Disclosure of Attorney Compensation required by FRBP 2016 will be amended, when necessary, to disclose fees as those are paid.

7

Ms. Cooper's affidavit also stated that she was a disinterested person as defined in 11 U.S.C. § 101(14), i.e. she was not owed fees by the debtor and was not otherwise a creditor of the debtor at the time of filing. Ms. Cooper's affidavit did not disclose that she was, in fact, owed fees for prepetition work performed for the debtors.

    3.    The Court approved the application to employ Ms. Cooper on April 19, 2011.

    4.    On June 3, 2011, Ms. Cooper filed an Amended Disclosure of Compensation of Attorney for Debtors, reporting that she had received $20,000 from the debtors. Ms. Cooper had not filed disclosures of her receipt of funds from the debtors since the outset of the case.

    5.    As a result of Ms. Cooper being suspended from the practice of law, on September 13, 2011, her representation of the debtors ended and Mr. Cooper was approved by the Court to represent the debtors. On January 2, 2012, after Ms. Cooper had been reinstated to the practice of law, the Court approved an application ending Mr. Cooper's representation of the debtors and reinstating Applicant as the debtors' attorney.

    6.    On February 26, 2012, Ms. Cooper filed an Application for Final Decree, seeking to close the debtors' case. On February 27, 2012, the UST informed Ms. Cooper that it was the position of the UST that in order for the Court to rule on the Application for Final Decree, she would need to file an application for her fees and those of any other professionals employed in the case. The UST also suggested that because Ms. Cooper's accounts had not remained in her control throughout the case, she should be prepared to demonstrate to the Court that the retainer paid by the debtors has remained in escrow since being paid to her.

    7.    Ms. Cooper filed her application for approval of fees on March 22, 2012. She

sought Court approval of fees in the amount of $21,582.20.[6] Ms. Cooper informed the Court that the application "has been filed with the court Nunc Pro Tunc with the intent to inform the court that the Applicant failed to follow the appropriate guidelines in applying for approval of disbursement of Debtors (sic) retainer." Ms. Cooper also informed the Court in her application that the "entirety of the electronic documentation regarding dozens of phone conversations, e-mails, and personal conversations was irretrievably lost during the interruption of Applicants (sic) representation of the Debtor (sic)." Ms. Cooper stated that the Application was "pieced together based on the information provided by the Court docket, Debtors (sic) files and the Applicants (sic) appointment calendar." At the hearing on her application, Ms. Cooper again confirmed that postpetition she had withdrawn the entire $20,000 retainer to pay her living expenses without seeking or obtaining Court approval.

8.    Ms. Cooper's application listed fees owing for services rendered by her to the debtors prepetition in the amount of $3,097.50.

### FINDINGS OF FACT IN THE *MCLEAN* CASE

Although Ms. Cooper has not filed an application for fees in the *McLean* case, she has informed the Court that in this case, postpetition, she has also withdrawn the $20,000 retainer she had received from the debtor without seeking or obtaining Court approval. At the hearing on Ms. Cooper's fee application in the *Hughes* case, Ms. Cooper informed the Court that she did not see any use in filing a fee application given the Court's denial of fees in the *Jerry Cox Company* and *Hughes* cases.

---

[6] The amount documented by Ms. Cooper in her application exceeded the amount she requested by $3,109.30. It is not clear why the full amount documented was not requested.

## **CONCLUSIONS OF LAW**

Compensation of professionals retained under § 327, including the debtor's attorney in a chapter 11 case, is governed by § 330, which provides, in relevant part:

(a)(1) After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to a trustee, a consumer privacy ombudsman appointed under section 332, an examiner, an ombudsman appointed under section 333, or a professional person appointed under section 327 or 1103 -

(A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, ombudsman, professional person, or attorney and by any paraprofessional person employed by any such person; and

(B) reimbursement for actual, necessary expenses.

The Rules of this Court require retainers held by professionals in a Chapter 11 case to "be maintained in a trust account and not be drawn against postpetition unless the Court orders otherwise." SC LBR 2016-1. In addition, the South Carolina Rules of Professional Conduct provide that "[a] lawyer shall deposit into a client trust account unearned legal fees and expenses that have been paid in advance, to be withdrawn by the lawyer only as fees are earned or expenses incurred." Rule 407, SCACR: Rule 1.15(c).[7] The requirements regarding retainers and the payment of compensation to attorneys employed to represent debtors in bankruptcy cases are not obscure or difficult to understand and considering their importance, they should be well known to bankruptcy practitioners with even limited experience. The relationship between the attorney and the debtor is a trust arrangement in which the attorney holds the retainer for the client as security for the payment of future fees and constitutes the property of the client or, in

---

[7] The U. S. District Court for the District of South Carolina has adopted the South Carolina Rules of Professional Conduct (Rule 407 of the South Carolina Appellate Court Rules) adopted by the Supreme Court of the State of South Carolina. Rules of Disciplinary Enforcement ("RDE") IV(B). Local Civil Rule 83.IX.04 provides that the RDE apply in the Bankruptcy Division of the District Court.

chapter 11 bankruptcy case, the estate. *See In re Equipment Services, Inc.*, 290 F.3d 739, 746 (4th Cir. 2002), *Affirmed by Lamie v. U. S. Trustee*, 540 U.S. 526, 124 S.Ct. 1023, (2004). Ms. Cooper knew that she was not entitled to pay herself fees and expenses from the retainers she held until such time as the Bankruptcy Court approved such payment, as evidenced by the language of the applications to employ her and her attached affidavits, which stated

> All funds received will be escrowed by Cooper Law Firm until such time as fees are approved by the Court, and the Disclosure of Attorney Compensation required by FRBP 2016 will be amended, when necessary, to disclose fees as those are paid.

At the hearing on Ms. Cooper's fee application in the *Jerry Cox Company case,* Ms. Cooper admitted that she withdrew the retainers she had received in the *Jerry Cox Company, Hughes and McLean* cases without seeking Court approval. Ms. Cooper told the Court that she used the funds "to live on" in a time of need  It is also clear that many months elapsed after Ms. Cooper withdrew the retainers and that during those months she did not disclose her withdrawal of the retainers to the Court as required by Rule 2016. As this Court has previously noted, "(M)oreover, the obligation to disclose fees received is a continuous one, as Rule 2016(b) provides, 'A supplemental statement shall be filed and transmitted to the United States trustee within 15 days after any payment or agreement not previously disclosed." *In re Walker*, Case No. 01-11884-jw (Bankr. D.S.C. 2/27/02).

In opposing Ms. Cooper's fee application in the *Jerry Cox Company* case, the UST contended that Ms. Cooper would never have applied for compensation and would not have disclosed her withdrawal of the retainer had the UST not insisted that she file a fee application and be prepared to demonstrate to the Court that the retainer had remained in tact during her suspension from the practice of law. While Ms. Cooper assured the Court that she was eventually

11

going to disclose her withdrawal of the retainer, she had the opportunity to disclose her withdrawal of the retainers in all three cases for many months and failed to do so. She did not make this disclosure when she asked to be reinstated as the debtors' attorney in all three cases. The debtors' plans of reorganization in the *Jerry Cox Company* and *Hughes* cases were silent as to attorney fees paid or earned. When Ms. Cooper filed the motion for a final decree in the *Jerry Cox Company* case on February 16, 2012, she understood that the timing of the final decree was important because the case would have to be closed prior to April 1, 2012, for the debtor to avoid payment of another quarterly fee payment to the UST. Ms. Cooper also understood that for the Court to enter the final decree and close the case, other outstanding motions and applications would first have to be resolved. Ms. Cooper's failure to file her fee application until after the UST suggested that it be filed, and too late for her fee application to be resolved prior to April 1, 2012, does not support her claim that she intended all along to file the application.

Ms. Cooper's postpetition withdrawal of the retainers without Court approval warrants denial of all compensation and disgorgement of the retainers in all three cases. Ms. Coopers failure to timely disclose her postpetition withdrawal of the retainers also warrants denial of all compensation and disgorgement of the retainers in all three cases.

Ms. Cooper was not qualified for employment in the *Jerry Cox Company* and *Hughes* cases as debtor's attorney pursuant to § 327(a) because she was not a disinterested person. In a chapter 11 case, any creditor of a bankruptcy estate, or anyone with "an interest materially adverse to the interest of the estate . . . by reason of any direct or indirect relationship to, connection with, or interest in, the debtor," is not a disinterested person. §§ 101(14)(A, C). A "creditor" includes any "entity that has a claim against the debtor that arose at the time of or

before the order for relief concerning the debtor," § 101(10)(A), and a "claim" includes any "right to payment, § 101(5)(A). Ms. Cooper's fee applications in the *Jerry Cox Company* and *Hughes* cases reflect fees owing for work performed prior to the filing of the cases. Ms. Cooper was a creditor of the debtors when those cases were filed. Ms. Cooper could have avoided this disqualifying circumstance by drawing down before the filing of the case from the retainer fees that she earned pre-petition, advise the Court in the documents related to their employment that they have done so, and disclose the amounts drawn and the amount remaining in the retainer.

Ms. Cooper's failure to timely disclose her prepetition claims against the debtors in the *Jerry Cox Company* and *Hughes* cases also warrants denial of her fee applications in those cases. The disclosure requirements of §§ 327 and 329 and Fed. R. Bankr. P. 2014 and 2016 require that all relevant information be disclosed by an applicant seeking Court approval for employment. An applicant may not exercise any discretion to withhold information. "This Court believes the policy of requiring timely disclosure of such matters under § 329 and Rule 2016(b) is central to the integrity of the bankruptcy process and are not to be taken lightly nor easily dismissed . . .." *In re TJN, Inc.*, 194 B.R. 400, 403 (Bankr. D.S.C. 1996).

The objection of the UST to Ms. Cooper's application for fees in the *Jerry Cox Company* case also suggested that even if denial of fees and expenses and disgorgement were not warranted for the reasons stated above, substantial reductions in the amounts requested, if not outright denial, would be warranted because the amounts sought are unreasonable based on the work performed and results obtained by Ms. Cooper. Because the Court finds that denial of fees and disgorgement of the retainers are warranted as discussed above, the Court need not rule on the reasonableness of the fees requested.

## **CONCLUSION**

For the reasons stated herein, it is

ORDERED that Ms. Cooper is denied all fees in the *Jerry Cox Company*, *Hughes*, and *McLean* cases and is ordered to disgorge to the debtors in these cases the retainers she received from them. The retainers to be repaid are $30,000 to *Jerry Cox Company*, $20,000 to *Hughes*, and $20,000 to *McLean*, totaling $70,000.

Ms. Cooper has informed the Court that she is unable to disgorge the full $70,000 at this time. However, Ms. Cooper has proposed a 45-month payment schedule which is adopted as the order of the Court. Beginning June 1, 2012, Ms. Cooper shall pay, on a pro rata basis, to the debtors of the *Jerry Cox Company*, *Hughes*, and *McLean* cases $1,000 payments for 12 months, $1,500 payments for the next 12 months, $1,875 payments for the next 16 months, and $2,000 payments for the next 5 months until the funds are repaid in full. It is further

ORDERED that beginning September 1, 2012, Ms. Cooper shall make quarterly reports to the UST which provide evidence that the required payments have been made. It is further

**ORDERED that the debtors in the *Jerry Cox Company*, *Hughes*, and *McLean* cases shall accept the disgorged fees paid pursuant to this order and shall not make future payments directly or indirectly to Ms. Cooper or Mr. Cooper.** It is further

ORDERED that Mr. Cooper's withdrawal of his application for fees in the *Jerry Cox Company* case and his waiver of any entitlement to fees in the *Hughes* and *McLean* cases is accepted by the Court. It is further

ORDERED that Ms. Cooper shall provide to the Court and UST within 15 days of the entry of this order an accounting of the funds taken from the retainer in this case and in any other

case in which she has withdrawn the retainer without Court approval.  The accounting shall include the dates and amounts of withdrawals, and the uses of the funds withdrawn.  It is further

ORDERED that the Court retains jurisdiction to enforce this Order and make any further and necessary inquiry or order.

ORDERED that the clerk shall serve a copy of this order on the debtors in the *Jerry Cox Company*, *Hughes*, and *McLean* cases.

**FILED BY THE COURT**
**05/23/2012**



Entered: 05/23/2012

/s/ John E. Waites

Chief US Bankruptcy Judge
District of South Carolina